*141 OPINION OF THE COURT — by the
IIon. FOWHATTAN ELLIS.'
The facts in this case, as they appear from an inspection of the record, are, that James McClelland and David Kerr on the 11th day of September 1816, jointly and severally, promised to pay Thomas Baker administrator, and Mary Brooks administratrix of the estate of John Brooks deceased, four hundred and thirty dollars for value received. Thomas Baker, the surviving representative of the estate of Brooks deceased, instituted an action of assumpsit, against John Kerr, the administrator of David Kerr deceased. The defendant pleaded non assumpsit, issue joined, and verdict returned for plaintiff.
When the cause came on to be heard at the Adams circuit court, May term, 1823, the defendant’s counsol prayed the court to instruct the jury, that if they should believe from the evidence, that the defendant’s intestate, was the security of James M’Clelland, in the declaration mentioned and that he or his representative had been injured by the failure or neglect of the plaintiff, to prosecute his demand against the principal, after being so requested to do, by the security, or his representative, the defendant was discharged, and that the jury should be so instructed. But the court differing in opinion from the counsel, instructed the jury, that the defendant, or the intestate, as the security, was as much bound, as the principal and could not be discharged on the ground staled by counsel, as it appeared from the note set forth, that the parties were jointly and severally bound, to which opinion of the court, the defendant by his counsel, excepted. The only point presented for the consideration of the courtis, whether, in an action of assumpsit upon a joint and several note, under the plea of the general issue, the present plaintiff in error, should have been allowed in the court below, the benefit of testimony, as a security, which would have gone to exonerate him from all liability. There seems tobe no doubt, from the weight of English authorities, that the laches of an obligee, in not calling upon the principal as early as he might have done, at the request of the surety, and before the insolvency of the principal, is not an estoppel at law against the surety, unless the contract has been essentially changed by the act of the obligee. This principle was ruled in the case of Wright vs. Russell, 2, W. Blackstone Reports 934, where Lord Chief Justice De Gray observes, “ The law is, that the *142 surety shall not be bound beyond the scope of his engagement as understood at the time he entered into it.” As if a person be in trade, and hire a clerk, and receive security, for the faithful discharge of his duties by accounting at regular and stated periods to his employer, and he after-wards enter into partnership with another, without the consent and privity of the guarrantee, the contract would be at an end, and ¡.the security discharged from all farther liability, at least, so far as it relates to the transactions of the partnership concerns. If then it be correct, the surety (shall not be bound beyond the scope of his engagement as he understood it at the time it was made; I think it equally true, he should be ma.de to conform to its requirements as he understood them, and that he should not be permitted, by his own act, contrary to the wish of the principal, to destroy the force and effect of his own undertakings; more especially be cannot do it in a case like the present, because the suit is instituted upon a joint and several note, when the liability of both principal and surely is irrevocably fixed by the operation of our statute. It is true, in some of the cases I have looked into, a defence of this kind has been tolerated, but they have always been regulated by statute. Such was the case of the PeopIe vs. Janson, et al, 7, Johnson, 332; where it was said, “In an action brought against a surety, on a bond, given for the faithful discharge of the duty of loan officer, under the act of Assembly, he might set up in his defence the laches of the supervisors, in not discharging and prosecuting the loan officer, for his first default.” The action, in the case alluded to, was founded upon a bond of indemnity under a penalty; and which, under the New York statute, required an assignment of breaches. The defendants pleaded nonest factum, and non damnificatus, and gave notice of special matter, to be offered in evidence at the trial. When the cause was heard, the defendants satisfactorily proved the negligence of the supervisors, and upon a reference of the special verdict, taken to the supreme court, and upon a full hearing, the postea was delivered to the defendants. The statute of New York, was evidently passed to lessen the rigor of the common law, — which drove parties into equity for relief against the penalty of such deeds, or for a general exonereter. Suppose we were to suffer one of the joint and several obligors, in a case like the present, to come in under the pica of non assumpsit, and give evidence of facts, which *143 in Equity might discharge his liability, would not the plaintUT be taken by surprise, and manifest injustice be done under such circumstances? for there is no doubt, but that the surety would conceal the nature of bis de-fence, knowing that it would be let in under the general issue. In every case of this kind, when the laches of the obligee, by way of defence, has been set up as an estoppel at law, the matter has beeen pleaded specially.
Note. — The case of the People vs. Janson, et al, cited from 7th Johnson, has been overruled by the supreme court of the United States, in the case of tho United States vs. Kirkpatrick, et al, 9, Whoaten, 720. In this case, the late lion. Jonathan H. Walker, then District Judge of the United States, for tho Western District of Pennsylvania, affirmed the doctrine decided in the case cited from 7th Johnson, and declared the surety rcloased by tho injurious laches of the Government of the United States; but this decision was roversed by the supreme court of the United States, upon the "round, that “Jaches is not imputable to the government.” This may be the law of England, upon the principle of regal prerogative, but tho doctrine which gives here, the government, as a suitor, lights paramount to individuals, does not seem to be consonant to the genius of our institutions. Tho contrary principle, and in a question of suretyship, was sustained in the very able opinion of Judge Porter of the supremo court of Louisiana. That distinguished civilian, says; — “In relation to the consequence of giving* time without the consent of tho surety, 1 have considered tho case precisely a» if the State of Louisiana was an individual, for I understand her rights in matters of this kind, are neither greater or less. There is no singlo principio ofafree constitutional government, which more challengesapplauso, or brings withitmore advantage to the citizen, than that which makes society in its collective capacity, bound bythoso laws which it enacts for the direction of each individual composing it, and compels the sovereign power tobe just from necessity, rather than from election.” 4 Louisiana Reports, 413. The principle thus eloquently defended by Judge Porter, constitutes one of the main pillars on which the fabric of civil liberty reposes. If the government of the United States, may, as a suitor, release itself from the ordinary obligations imposed upon individuals, upon grounds of supposed “public policy,” it may, upon the same principles, demand of its judicial tribunals the sacrilico of all individual rights, as a burnt offering upon the altar of state necessity. That “public policy” is most glorious and expedient, by which the government, in contests with the chi-pen, subjects itself to the controul of the same laws, and thus, by the justice of its career, entwines Hself inseparably with the affections, and sustains itself by the power of a free and happy people.
Whether the surety has been discharged or not, is a legal question, for the consideration of the court; and not a question of fact for the exclusive deliberation of the jury — for it is the form of the security which must determine the nature of the defence, and not the equitable rights of the parties. In the case of the people against Janson, the ancestor of the defendant, was nothing more than a surety, as appeared upon the face of the bond. But here the ancestor of the present defendant, appears from the promissory note itself, to be one of the joint and several obligors, and under such circumstances, he ought not to be permitted to aver by pleading, that he is simply a surety, and not a principal. See the case of Rees vs. Barrington, 2 Vesey, junr. 512. In the case of the “Trent Navigation Company vs. Ilarby” 10, East 40 — debt on a bond against surety, conditioned, «Sic. Lord Ellenborough, Chief Justice, said, “I know of no such estoppel at law, whatever remedy there may be in * equity.”— Judgment of the court below affirmed.